COOLEY LLP
JANET L. CULLUM (104336) (jcullum@cooley.com)
ANNE H. PECK (124790) (peckah@cooley.com)
JOHN PAUL OLEKSIUK (283396) (jpo@cooley.com)
CHANTAL Z. HWANG (275236) (chwang@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:     (650) 843-5000
Facsimile:     (650) 849-7400

Attorneys for Plaintiff
Houzz Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUZZ INC., a Delaware corporation, | **Case No.** |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **(1) FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114;** |
| ODL, INCORPORATED, a Michigan Corporation, | |
| INHOUZ.COM, INC., a Michigan Corporation, | **(2) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125;** |
| Defendants. | **(3) FEDERAL TRADEMARK DILUTION UNDER 15 U.S.C. § 1125; and** |
| | **(4) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Houzz Inc. ("Plaintiff" or "Houzz") complains and alleges against ODL, Incorporated ("ODL") and InHouz.Com, Inc. ("InHouz") (collectively, "Defendants") as follows:

### THE PARTIES

1.      Plaintiff Houzz, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 310 University Avenue, Palo Alto, California 94301.

2.      Defendant ODL, Incorporated is a corporation organized under the laws of the State of Michigan with its principal place of business at 215 East Roosevelt Avenue, Zeeland, Michigan 49464.

3.      Defendant InHouz.com, Inc. is a corporation organized under the laws of the State of Michigan with its principal place of business at 215 East Roosevelt Avenue, Zeeland, Michigan 49464.

4.      Upon information and belief, Defendant InHouz.com, Inc. is a wholly-owned subsidiary of Defendant ODL, Incorporated.

### JURISDICTION AND VENUE

5.      This action arises under the federal trademark statute (the "Lanham Act"), 15 U.S.C. §1051, *et seq.*

6.      This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1119 and 1121, and 28 U.S.C. §§ 1331, 1338, and 1367.

7.      Plaintiff is informed and believes, and based thereon alleges, that this Court has personal jurisdiction over Defendants because (i) Defendants conduct business within the State of California and this judicial district; (ii) Defendants have caused products to be advertised, promoted, and sold under the IN HOUZ trademark in the State of California and this judicial district; (iii) the causes of action asserted in this Complaint arise out of Defendants' contacts with the State of California and this judicial district; and (iv) Defendants have caused tortious injury to Plaintiff in the State of California and this judicial district.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because (i) Defendants conduct business within the State of California and this judicial district; (ii) Defendants have caused products to be advertised, promoted, and sold under the IN HOUZ trademark in the State of California and this judicial district; (iii) the causes of action asserted in

1   this Complaint arise out of Defendants' contacts with the State of California and this judicial

2   district; and (iv) Defendants have caused tortious injury to Plaintiff in the State of California and

3   this judicial district.

4                           **INTRADISTRICT ASSIGNMENT**

5       9.      This is an Intellectual Property Action to be assigned on a district wide basis

6   pursuant to Civil L.R. 3-2(c).

7                           **FACTUAL BACKGROUND**

8                    **PLATINFF'S BUSINESS AND THE HOUZZ TRADEMARK**

9       10.     Houzz is on online platform and application offering a wide variety of information

10  about home design and remodeling to a broad community of users across the United States and

11  internationally.

12      11.     Houzz began as a local, small project in the Bay Area founded by a husband and

13  wife who had experienced difficulty in identifying the resources and information they desired in

14  connection with remodeling their home.

15      12.     Over the years, Houzz has transformed the home remodeling and design industry

16  by bringing together a community of homeowners, designers, architects and others in the industry

17  to share, exchange and discuss remodeling and design and has  become the leading – and largest –

18  platform for home remodeling and design.

19      13.     With more than 35 million unique monthly users and 800,000 active home

20  professionals, Houzz offers the largest home community online.

21      14.     Houzz' website, which is located at <www.houzz.com> (the "HOUZZ Website"),

22  and Houzz' mobile application now feature over 7 million professional photos of home interiors

23  and exteriors.

24      15.     Since 2008, Houzz has continuously used the inherently distinctive trademark

25  HOUZZ for a website featuring information in the fields of home renovation, home interior

26  design, interior decorating and remodeling.

27

28

16.    At Houzz, the focus today is the same as it was from day one: to create the best experience for home design by using technology to remove the barriers between homeowners and good design, and between home design and remodeling professionals and homeowners.

17.    The HOUZZ Website and Houzz' mobile application provide a platform for users to create electronic scrapbooks and share photos of home design and decorating ideas, including DIY ("do it yourself") home projects.

18.    The HOUZZ Website and Houzz' mobile application provide a platform for home design and remodeling professionals to share and promote their services by featuring their portfolios of past work and facilitating connections with consumers for those services.

19.    The HOUZZ Website and Houzz' mobile application provide a platform to enable homeowners to readily locate and connect with providers of products including building materials, furnishing and decorative items featured in images displayed on the HOUZZ Website and on the Houzz mobile application.

20.    Houzz has devoted substantial time, effort, and resources to the development and extensive promotion of the HOUZZ mark and the products and services offered thereunder. As a result of Houzz' efforts and the quality of the products and services offered under the HOUZZ mark, the public has come to recognize and rely upon the HOUZZ trademark as an indication of quality and the HOUZZ mark enjoys substantial goodwill in the marketplace and is a valuable asset of Houzz.

21.    Over the years, the HOUZZ mark has enjoyed widespread media coverage, including coverage by *The Today Show*, *CNBC*, *Bloomberg Businessweek*, *Fox Business*, *Fast Company*, *Les Echos*, *Pando Daily*, *Time*, *Forbes*, *Mashable*, *Bloomberg TV*, *Internet Trends 2014*, *TechCrunch*, *Vanity Fair*, *CNN*, *The Huffington Post*, *The Wall Street Journal*, *The Washington Post*, *Digital Journal*, *The San Francisco Chronicle*, *The New York Times*, *Fortune.com*, *The Dallas Morning News*, *The Cleveland Plain Dealer*, *Landscape Management Magazine*, *The Valley Girl Show*, *AllThingsD*, *PCMag.com*, *Barron's*, *MacObserver*, *TheStreet*, *Remodeling Magazine*, *The Sacramento Bee*, *Architectural Digest*, *The National Post*, *Macworld*, *Search Engine Watch*, *The Los Angeles Times*, *Forbes*, *Las Vegas Review-Journal*, *Chicago*

*Tribune*, *InStyle*, *AppStorm*, *Parenting*, *The Kim Komando Show*, *The Mercury News*, *La Stampa*, *AppCraver*, *The Associated Press*, and *The Oregonian*.

22.     As a result of Houzz' widespread use of the HOUZZ mark in the United States, extensive advertising and promotion of the products and services sold in connection with the HOUZZ mark, widespread media coverage of Houzz' products and services, the high degree of customer recognition of the HOUZZ mark, the strong and loyal base of customers that Houzz enjoys for its services, and the distinctiveness of the HOUZZ mark, among other factors, the HOUZZ mark is famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

23.     On April 10, 2012, the United States Patent & Trademark Office ("PTO") issued U.S. Trademark Registration No. 4,124,845 for the mark HOUZZ in connection with "[p]romoting home design and decorating products of others by providing hypertext links to the web sites of others; promoting home design, decorating, and remodeling services of others by providing contact information and hypertext links to service provider's websites," "[p]roviding a website that features information in the field of home renovation and remodeling," and "[p]roviding a website featuring information in the field of interior design and architecture for use by interior designers and architects; [p]roviding a website featuring information in the field of home interior design and interior decorating; [p]roviding an website that features temporary use of non-downloadable software allowing website users to upload, post, share and display online photos of interior design and decorating ideas and which also allows users to post questions and comments in the field of interior design, decorating and remodeling; providing a website featuring temporary use of non-downloadable software for use in creating online, electronic scrapbooks of design and decorating ideas."

24.     The application filing date and priority date for U.S. Trademark Registration No. 4,124,845 is July 8, 2011.

25.     The date that the HOUZZ mark was first used for each class of services in U.S. Trademark Registration No. 4,124,845 was at least as early as August 2008.

26.     On February 18, 2014, the PTO issued U.S. Trademark Registration No. 4,485,255 for the mark HOUZZ and Design (in stylized form) in connection with "[p]roviding online directories and listings featuring vendor contact information in the field of interior decorating, furnishings, and remodeling; providing hypertext links to websites of others featuring the sale of furnishings," "[p]roviding a website that features information in the field of home renovation and remodeling; providing hypertext links to websites of others featuring home remodeling information," and "[p]roviding a website featuring information in the field of interior decorating and architecture; [p]roviding a website that features temporary use of non-downloadable software allowing website users to upload, post, share and display online photos of interior decorating ideas and that also allows users to post questions and comments in the field of interior decorating and remodeling; providing a website featuring temporary use of non-downloadable software for use in creating online, electronic scrapbooks of decorating ideas; providing hypertext links to websites of others featuring interior decorating information."

27.     The application filing date and priority date for U.S. Trademark Registration No. 4,485,255 is July 23, 2013.

28.     The date that the HOUZZ and Design mark was first used for each class of services in U.S. Trademark Registration No. 4,485,255 was at least as early as December 2009.

29.     U.S. Trademark Registration Nos. 4,124,845 and 4,485,255 are referred to collectively herein as the "HOUZZ Registrations."  True and correct copies of the registration certificates for the HOUZZ Registrations, along with a PTO report on the current status of the HOUZZ Registrations, are attached as Exhibit A, and incorporated by reference as though fully set forth herein. Houzz is also the owner of several other pending U.S. trademark applications for the mark HOUZZ, as well as foreign trademark applications and registrations.

30.     The HOUZZ Registrations are in full force and effect on the PTO's Principal Register.

**DEFENDANTS' USE OF THE IN HOUZ TRADEMARK**

31.     Notwithstanding Houzz' diligent efforts to monitor and prevent unauthorized uses of its HOUZZ trademark, Defendants have engaged in reoccurring and willful infringement and

dilution of the HOUZZ trademark in connection with an IN HOUZ branded website featuring information in the fields of home renovation, home interior design, interior decorating and remodeling, DIY home projects, and the sale of related goods, including but not limited to infringement and dilution arising from deliberate and willful copying from Houzz.

32.     On August 7, 2013, ODL applied to register the mark IN HOUZ with the United States Patent and Trademark Office, and the registration issued as U.S. Trademark Registration No. 4,668,337 ("ODL's Registration") on January 6, 2015, covering "[p]roviding a website to promote the sale and purchase of decorative [sic] door glass, retractable screens, doorglass blinds, door glass, indoor storage and communication system, and tubular solar lighting," and "[p]roviding information on installation services available by region in the fields of decorative door glass, retractable screens, door glass blinds, door glass, indoor storage and communication systems, and tubular solar lighting." ODL's Registration contains a claimed date of first use of March 31, 2014 for the IN HOUZ mark for the services identified in the registration. A true and correct copy of ODL's Registration is attached hereto as Exhibit B.

33.     ODL's Registration has not become incontestable.

34.     ODL's Registration is vulnerable to cancellation on the basis of Houzz' priority and likelihood of confusion between the IN HOUZ mark and the HOUZZ mark.

35.     ODL's Registration is also vulnerable to cancellation on the basis that the IN HOUZ mark dilutes the distinctive quality of the famous HOUZZ mark.

36.     On August 24, 2015, Houzz filed a Petition for Cancellation of the IN HOUZ Registration, and the Petition for Cancellation is currently pending.

37.     Upon information and belief, on or about March 20, 2012, an agent of Defendants created a user profile on the HOUZZ Website, using a username and name corresponding with the name of an ODL employee, and using an email address ending in "inhouz.com".

38.     Upon detecting this account and the unauthorized use of the IN HOUZ mark, on or about March 23, 2015, Houzz suspended this account.

39.     Shortly after learning of Defendants' infringing activities, on or about March 27, 2015, Houzz sent a letter to Defendants, demanding that they cease all use of the IN HOUZ mark

in connection with their identical or closely related offerings in the category of home design and remodeling as those offered under the HOUZZ mark, as shown at inhouz.com.

40.     By letter dated April 2, 2015, ODL refused to comply with Houzz' demands, and Defendants continued engaging in their infringing activity.

41.     Upon information and belief, on or about May 26, 2015, Defendants resumed accessing the HOUZZ Website under a new account, using a username and email that appeared to be associated with the same employee of ODL whose account was suspended by Houzz on March 23, 2015.

42.     Upon detecting this account on or about August 12, 2015, Houzz suspended this account as well.

43.     Through their accounts on the HOUZZ Website, Defendants have offered for sale products under the IN HOUZ mark. Attached hereto as Exhibit C is a true and correct copy of a cached version of a page on the HOUZZ Website as of July 19, 2015 reflecting the listing of a product under the IN HOUZ mark.

44.     Defendants have used the confusingly similar and dilutive IN HOUZ mark in connection with dozens of blog articles that are deliberate and willful imitations of the style used by Houzz covering the same subjects as Houzz. For example:

| HOUZZ ARTICLES AVAILABLE AT HOUZZ.COM | IN HOUZ ARTICLES AVAILABLE AT INHOUZ.COM |
|---|---|
| 17 Ways to Increase Your Home's Curb Appeal (first published March 20, 2013) | 12 Ways to Add Curb Appeal to Your Home (first published August 6, 2015) |
| How to Spruce Up Your Patio for Summertime Fun (first published May 23, 2015) | Sprucing Up Your Outdoor Entertaining Space for Spring (first published August 3, 2015) |
| 12 Cheap and Chic Fall Centerpieces (first published September 26, 2012) | 12 Creative Centerpieces for Any Occasion (first published August 13, 2015) |

| HOUZZ ARTICLES AVAILABLE AT HOUZZ.COM | IN HOUZ ARTICLES AVAILABLE AT INHOUZ.COM |
|---|---|
| Keys to a Stylish Entry (first published April 2, 2011) | Transformation Tuesday: A Stylish Entryway (first published April 28, 2015) |
| 8 Amazing Home Exterior Transformations (first published May 29, 2013) | 5 Ways to Transform an "Ugly" Home Exterior (first published March 9, 2015) |
| Find the Right Glass Door for Your Patio (first published August 1, 2013) | Finding Your Front Door Glass Design Style (first published July 9, 2015) |
| Your Door: Shades of Privacy and Light (first published January 17, 2012) | Transformation Tuesday: Natural Light and Privacy (first published April 21, 2015) |
| The Joy of Spring: Bring the Outside Inside (March 20, 2011) | 5 Tips on How to Bring the Outdoors Inside (first published January 22, 2015) |
| 13 Upgrades to Make Over Your Outdoor Grill Area (first published June 25, 2015) | 8 Patio Upgrades for Under $200 Each (first published August 5, 2015) |
| 10 Fun Decorating Projects for Spring (first published March 19, 2014) | 10 Ways to Spruce Up Your Home Décor for Spring (first published May 6, 2015) |

True and correct copies of excerpts from each of the respective houzz.com and inhouz.com articles listed above are attached hereto as Exhibit D.

45.    On social media, Defendants have also shared links to Houzz' content in a manner that puts the IN HOUZ mark and HOUZZ mark in close proximity.

46.     For example, Defendants posted a link to a Houzz article on Twitter, under the InHouz username, with multiple references to Houzz, as shown in the following screenshot:

47.     Defendants posted the same article on Facebook as well, under the InHouz username, as shown in the following screenshot:



48.     Defendants are also promoting the IN HOUZ brand elsewhere to consumers located within this District, as well as promoting and selling other goods under the IN HOUZ brand through retailers and dealers located within this District.

49.     Attached hereto as Exhibit E is a true and correct copy of a page from ODL's website located at <www.odl.com> on August 14, 2015, identifying 121 physical locations within 100 miles of zip code 94101 where ODL products can be purchased, and identifying online retailer InHouz.com as a location where customers located in zip code 94101 may purchase ODL products within this District.

50.     Defendants' IN HOUZ branded website featuring products and information in the fields of home renovation, home interior design, interior decorating and remodeling competes directly with Houzz' offering of the same services under the HOUZZ brand.

51.     Defendants' products and services offered under the IN HOUZ brand are offered through the same marketing and trade channels and to the same target customers as Houzz',

including through e-commerce websites and, until Houzz suspended Defendants' accounts, in some cases through the HOUZZ Website itself.

52.    Houzz began using the HOUZZ mark in the United States prior to Defendants' adoption and use of the IN HOUZ mark in the United States. The priority dates for the HOUZZ Registrations are also prior to Defendants' first use of the IN HOUZ mark and application to register the IN HOUZ mark in the United States.

53.    The HOUZZ marks acquired wide recognition in the general consuming public, and became famous, prior to Defendants' use of the IN HOUZ mark.

54.    The IN HOUZ mark is highly similar in sight, sound, and appearance to the HOUZZ mark.

55.    The particular stylization of IN HOUZ used by Defendants, with the terms IN and HOUZ separated by a design element, exacerbates the similarity in appearance to the HOUZZ mark, as shown in the following stylization:



56.    Defendants' use of the term IN HOUZ described herein is likely to cause confusion in the marketplace and infringes Houzz' valuable rights in the HOUZZ mark.

57.    Defendants' use of the term IN HOUZ described herein creates a false suggestion of an affiliation or connection between Defendants and Houzz.

58.    The term IN HOUZ incorporates a distinctive part of the HOUZZ mark, i.e., "HOUZ," and thus Defendants' use of the IN HOUZ mark impairs the distinctiveness of the HOUZZ mark and weakens the connection in consumers' minds between the HOUZZ mark and Houzz' services.

59.    Houzz is not affiliated with Defendants. Houzz has not consented to, sponsored, endorsed, or approved of Defendants' use of the term IN HOUZ in connection with the production, marketing, or sale of any products or services.

60.     On information and belief, Defendants' actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with Houzz and its HOUZZ trademark.

### FIRST CAUSE OF ACTION

### FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

61.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 of this Complaint as if fully set forth here.

62.     The HOUZZ trademark is an inherently distinctive, strong, valid, and protectable registered trademark owned by Plaintiff.

63.     Plaintiff is informed and believes, and on that basis alleges, that Defendants have marketed and sold in commerce products and services under the confusingly similar IN HOUZ mark.

64.     Defendants' use of the mark IN HOUZ in connection with its home renovation product and services is likely to cause confusion, mistake, or deception as to the source or sponsorship of the products and/or is likely to lead the consuming public to believe that Plaintiff has authorized, approved, or somehow sponsored Defendants' products and services.

65.     The actions of Defendants described above and specifically, without limitation, Defendants' use of the term IN HOUZ on their products and services constitute trademark infringement in violation of 15 U.S.C. § 1114.

66.     Plaintiff has been, and will continue to be, damaged and irreparably harmed by the actions of the Defendants, which will continue unless Defendants are enjoined by this Court. Plaintiff has no adequate remedy at law in that the amount of damage to Plaintiff's business and reputation and the diminution of the goodwill of the HOUZZ trademark are difficult to ascertain with specificity. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

67.     Plaintiff is entitled to recover damages in an amount to be determined at trial and the profits made by Defendants on the sales of any products and services through Defendants' use of the term IN HOUZ in the United States.  Furthermore, Plaintiff is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the

intention of causing confusion, mistake, and deception, making this an exceptional case entitling Plaintiff to recover treble damages, reasonable attorneys' fees, and costs pursuant to 15 U.S.C. § 1117, as well as prejudgment interest.

## SECOND CAUSE OF ACTION

### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125

68.　　Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 67 of this Complaint as if fully set forth here.

69.　　Defendants have used in commerce and without Plaintiff's authorization or consent the term IN HOUZ, which is confusingly similar to Plaintiff's registered and common law HOUZZ mark.

70.　　Defendants' actions as described herein are likely to cause confusion and deception among the consuming public and is likely to lead the consuming public to believe that Plaintiff has authorized, approved, or somehow sponsored Defendants' use of the term IN HOUZ.

71.　　Defendants' actions constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

72.　　Plaintiff has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court. Plaintiff has no adequate remedy at law in that the amount of damage to Plaintiff's business and reputation and the diminution of the goodwill of the HOUZZ trademark are difficult to ascertain with specificity.  Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

73.　　Plaintiff is entitled to recover damages in an amount to be determined at trial and profits made by Defendants on the sales of any products and services through use of the IN HOUZ mark.  Furthermore, Plaintiff is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, deception, making this an exceptional case entitling Plaintiff to recover treble damages, reasonable attorneys' fees, and costs pursuant to 15 U.S.C. § 1117, as well as prejudgment interest.

## **THIRD CAUSE OF ACTION**

### **FEDERAL TRADEMARK DILUTION UNDER 15 U.S.C. § 1125**

74. Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 73 of this Complaint as if fully set forth here.

75. As a result of the considerable publicity afforded the HOUZZ mark, and the strong and loyal base of customers that Houzz enjoys for its services, the HOUZZ mark has a high degree of consumer recognition, it is widely recognized by the general consuming public of the United States as a designation of Houzz' services, and it is famous.

76. The HOUZZ mark became famous before Defendants adopted or applied to register the IN HOUZ mark.

77. Defendants' IN HOUZ mark incorporates a distinctive part of the HOUZZ mark, i.e., "houz," and thus their use is likely to cause an association between IN HOUZ and HOUZZ that impairs the distinctiveness of the HOUZZ mark and weakens the connection in consumers' minds between the HOUZZ mark and Houzz' services. Defendants' use of the IN HOUZ mark is likely to cause dilution by blurring based on a number of relevant considerations, including:

(a) The high degree of similarity between the IN HOUZ mark and the famous HOUZZ mark;

(b) The inherently distinctive nature of the HOUZZ mark;

(c) Houzz' substantially exclusive use of the HOUZZ mark;

(d) The wide recognition of the HOUZZ mark by the general consuming public; and

(e) On information and belief, Defendants intended to create an association with the HOUZZ marks.

78. Plaintiff has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court. Plaintiff has no adequate remedy at law in that the amount of damage to Plaintiff's business and reputation and the diminution of the goodwill of the HOUZZ trademark are difficult to ascertain with specificity. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

79.     Plaintiff is entitled to recover damages in an amount to be determined at trial and profits made by Defendants on the sales of any products and services through use of the IN HOUZ mark. Furthermore, Plaintiff is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing an association between IN HOUZ and HOUZZ, making this an exceptional case entitling Plaintiff to recover treble damages, reasonable attorneys' fees, and costs pursuant to 15 U.S.C. § 1117, as well as prejudgment interest.

**FOURTH CAUSE OF ACTION**

**UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200, *ET SEQ*.**

80.     Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 79 of this Complaint as if fully set forth here.

81.     By the acts described herein, Defendants have engaged in unlawful and unfair business practices that have injured and will continue to injure Plaintiff's business and property in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.

82.     Defendants' acts alleged herein have caused monetary damages to Plaintiff in an amount to be proven at trial.

83.     Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff and its business, reputation, and trademarks, unless and until Defendants are permanently enjoined.

84.     As a direct and proximate result of Defendants' conduct alleged herein, Defendants have been unjustly enriched and should be ordered to disgorge any and all profits earned as a result of such unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

A.     That Plaintiff be granted preliminary and permanent injunctive relief under 15 U.S.C. § 1051 *et seq*. and California Business and Professions Code §§ 14247 and 17200 *et seq*; specifically, that Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and

1 all other persons acting in concert with it be preliminarily and permanently enjoined from (i)

2 using the IN HOUZ mark, or any other mark confusingly similar to Plaintiff's HOUZZ

3 trademark, in connection with the marketing, promotion, advertising, sale, or distribution of any

4 products and services and (ii) from any acts of infringement of Plaintiff's HOUZZ trademark.

5       B.     That Defendants file, within ten (10) days from entry of an injunction, a

6 declaration with this Court signed under penalty of perjury certifying the manner in which

7 Defendants have complied with the terms of the injunction;

8       C.     That Defendants are adjudged to have violated 15 U.S.C. § 1114 by infringing

9 Plaintiff's HOUZZ trademark;

10       D.     That Defendants are adjudged to have violated 15 U.S.C. § 1125(a) for unfairly

11 competing against Plaintiff by using a false designation of origin for Defendants' infringing

12 products and services;

13       E.     That Defendants are adjudged to have violated 15 U.S.C. § 1125(c) for dilution by

14 blurring of Plaintiff's HOUZZ trademark;

15       F.     That Defendants are adjudged to unlawfully and unfairly compete against Plaintiff

16 under the laws of the State of California, Cal. Bus. & Prof. Code § 17200 *et seq.*;

17       G.     That the Court decree and order the cancellation of ODL's U.S. Trademark

18 Registration No. 4,668,337 for the mark IN HOUZ, on the basis of priority and likelihood of

19 confusion, and certify said decree and order to the Director of the United States Patent and

20 Trademark Office under 15 U.S.C. § 1119;

21       H.     That Plaintiff be awarded Defendants' profits derived by reason of said acts, or as

22 determined by said accounting;

23       I.     That Plaintiff be awarded three times Defendants' profits and three times of all

24 Plaintiff's damages, suffered as a result of Defendants' willful, intentional, and deliberate acts in

25 violation of the Lanham Act, as well as Plaintiff's costs, attorneys' fees, and expenses in this suit

26 under 15 U.S.C. § 1117;

27       J.     That Plaintiff be awarded damages in an amount sufficient to compensate it for the

28 damage caused by Defendants' unfair competition under Cal. Bus. & Prof. Code § § 17200 *et seq*;

K.    That Plaintiff be awarded three times Defendants' profits and three times Plaintiff's damages suffered as a result of the willful, intentional, and deliberate acts in violation of Cal. Bus. & Prof. Code §§ 14247 and 14250;

L.    That Plaintiff be granted prejudgment and post judgment interest;

M.    That Plaintiff be granted costs associated with the prosecution of this action; and

N.    That Plaintiff be granted such further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

Dated: August 24, 2015

COOLEY LLP
JANET L. CULLUM (104336)
ANNE H. PECK (124790)
JOHN PAUL OLEKSIUK (283396)
CHANTAL Z. HWANG (275236)

/s/ Janet L. Cullum
Janet L. Cullum (104336)
Attorneys for Plaintiff
Houzz Inc.

120302952 v4